Woods *v.* Wicks.

D. WOODS *v.* M. J. WICKS *et al.*

1. CORPORATION. *Foreign. Stockholders. Liability.* The personal liability of the stockholders of a foreign corporation under the statute creating it can only be enforced in another State against a resident stockholder *ex comutate.*

2. SAME. *Same. Same.* If the liability is in the nature of contract, and is not opposed to the legislation or public policy of the State in which it is sought to be enforced, the courts will enforce it.

3. SAME. *Stockholders. Liability will not be enforced. When.* If the liability is penal in its nature, it will not be enforced outside of the State creating it.

Woods *v.* Wicks.

4. SAME. *Same. Same.* A liability of a stockholder made dependent upon the contingency of the president and a majority of the directors of a corporation failing to make a certificate of the payment of the capital stock, the capital stock having been actually paid within the time prescribed by the statute, is, in its nature, highly penal.

5. SAME. *Stockholders. Liability.* Where the general statute of the State of Kentucky, authorizing the organization of certain corporations, provided that the capital stock should be paid in, one-half within one year and the other half within two years, and further provided that, within thirty days after the payment of the last installment, the president and a majority of the directors should make and sign a certificate stating the amount of the capital stock so fixed and paid in, which shall be filed and recorded in the clerk's office wherein the certificate of incorporation had been filed; and where the statute, by another section, made the stockholders individually liable, jointly and severally, for all debts due the laborers and servants for services, and to other creditors to an amount equal to the amount of stock held by them respectively at the times such debts were contracted, after the recovery of judgment against the corporation and return of an execution unsatisfied, with a proviso that after the full payment of the capital stock and the certificate thereof, the liability of the stockholder, "as provided in this section," shall cease; it was held— 1. That the stockholders could not be held individually liable on the debts due to laborers and servants or other creditors without a recovery against the corporation on the debt and the return of an execution unsatisfied. 2. That the last clause of the second section cited applied to the debts due to laborers and servants as well as to the debts due to other creditors. 3. That the liability of the stockholders ceased with the full payment of the capital stock and the certificate thereof. 4. That the continuance of the liability of the stockholders after the full payment of the capital stock, because of the failure of the president and a majority of the directors to make the certificate of payment, was penal in its character, and would not be enforced against resident stockholders in this State.

---

FROM SHELBY.

---

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

SMITH & COLLIER for complainant.

J. R. & W. S. FLIPPIN, HARRIS & TURLEY and W. MESSICK for defendants.

COOPER, J., delivered the opinion of the court.

The defendants are stockholders in a corporation organized, on the 19th of July, 1872, by citizens of the State of Tennessee as the Memphis Lead Mining Company, under an act of the General Assembly of the State of Kentucky, for the purpose of mining for lead in Crittenden county of that State. The capital stock was fixed at $80,000. and paid up, the stock being held· in shares of $100 each. On the 1st of August, 1872, the certificate of organization was filed in the office of the clerk of the county court of Crittenden county as required by law, and the corporation shortly thereafter commenced mining operations. The company expended its capital, and became indebted to complainant for goods, etc.; to D. C. Herndon, its general superintendent in Kentucky, for his services, $1,145, and to laborers and servants in various sums. The superintendent gave to the laborers and servants acknowledgments or due-bills for the amounts due them respectively, and they assigned them to complainant. The superintendent also assigned to complainant his claim against the company, and, on August 20, 1873, gave to complainant a due-bill for $3,201.12, being the aggregate amount of his own claim, the account of complainant for goods, and the various small claims of laborers and servants assigned to him. This was done as a matter of convenience to the complainant

Woods *v.* Wicks.

in the suit he proposed to bring against the corporation. He did sue the corporation in Crittenden county on the note thus given, and on the 4th of September, 1873, recovered judgment for the amount. Execution issued on the judgment, and was levied on the land and personal property of the corporation. At the sale made under the levy, the property brought the net sum of $1,652.68, which was credited on the judgment. There was a return of *nulla bona* as to the residue. On the 23d of October, 1873, the superintendent gave a due-bill to a laborer or servant of the corporation for $299, and another for $2. These due-bills were afterwards, in January and April, 1874, assigned by the payees to complainant. On the 29th of August, 1874, the complainant filed this bill, setting out the foregoing facts, except the fact that the complainant's account for goods, etc., formed a part of the large note and judgment, and seeking to hold the defendants individually liable for the unpaid balance of the judgment and the two due-bills. The chancellor, on final hearing, dismissed the bill, and complainant appealed.

The 9th section of the act under which the corporation was organized reads thus: "The capital stock fixed and limited in the certificate of incorporation shall be all paid in, one-half thereof within one year, and the other half thereof within two years from the incorporation of the company, or such corporation shall be dissolved; and within thirty days after the payment of the last installment thereof, the president and a majority of the directors shall make and sign a

certificate, stating the amount of the capital stock so fixed and paid in, which shall be filed and recorded in the clerk's office wherein the certificate of incorporation shall have been filed."

Section 13 is: "The stockholders of every such company shall be individually liable, jointly and severally, for all debts due to laborers and servants · for services performed for such corporation; and, until the whole amount of the capital stock of the company shall have been paid, and the payment certified as herein required, they shall be liable, jointly and severally, to other creditors of the company to an amount equal to the amount of stock held by them respectively at the times such debts shall have been contracted; but no stockholder shall be personally liable because of his being a stockholder for any debt of the company which is not to be paid within one year from the time the debt is contracted, nor unless a suit for the collection of the debt shall have been brought against the company within one year after the debt shall have become due, nor until an execution therefor against the company shall have been returned unsatisfied in whole or in part. But after. the full payment of the capital stock and the certificate thereof, as herein provided, the liability of the stockholder, as provided in this section, ·shall cease."

The counsel of the complainant concedes that he has been unable ˙ to find any decision of the courts of Kentucky construing the two sections of the general incorporation law under consideration. Nor has he found in other States any statute construed which is

worded precisely like the one in controversy. Similar statutory provisions have been found, but differently collocated, and the decisions are not ·in accord upon them. We are compelled, therefore, to construe the sections in controversy as best we may.

The complainant seeks to hold the defendants liable on part of his demand after having recovered judgment at law against the corporation and had an execution thereon returned unsatisfied for that part, and on another portion of his demand without having sued the corporation. The latter part of his demand is for debts due to laborers and servants for services performed for the corporation, and his counsel insists that he is entitled to recover to this extent without these preliminary ·proceedings.

At common law, the stockholders of a corporation are not personally liable for the debts of the corporation, for the obvious reason that the contract is not made with them but with the body corporate: · *Spear* v. *Grant,* 16 Mass., 9; *Myers* v. *Irwin,* 2 S. & R., 731; *Slee* v. *Bloom,* 19 Johns., 473; *Liverpool Ins. Co.* v. *Massachusetts,* 10 Wall., 575. If made liable by the charter, or statute under which the corporation is organized, their liability may be treated as growing out of the contract by which they become stockholders, the corporate capacity conferred being qualified, or as created by statute, the corporate capacity being perfect. Where the liability has been for the payment of all debts without qualification, the courts of some of the States, and notably of the State of New York, have adopted the former theory: *Cor-*

*ning* v. *McCullough*, 1 N. Y., 47; *Harger* v. *McCullough*, 2 Denio, 119; *Southmayd* v. *Ross*, 3 Conn., 52. Other States, and notably the State of Massachusetts, have preferred the latter theory: *Erickson* v. *Nesmith*, 4 Allen, 233; *Hanson* v. *Donkersley*, 37 Mich., 184; *Halsey* v. *McLean*, 12 Allen, 438; *Booth* v. *Campbell*, 37 Md., 522; *Patterson* v. *Wyomissing Co.*, 40 Pa. St., 117. The court of appeals of New York seemed inclined at one time to carry the doctrine of that State so far as to include the liability of a stockholder arising out of the failure of the president and directors of a corporation to make and record a certificate that the capital stock had been paid in: *Aspinwall* v. *Sacchi*, 57 N. Y., 331. But the same court has recently reached the sounder conclusion that after a corporate capacity has been acquired, a personal liability of the stockholder is inconsistent therewith, and cannot be imposed for a failure to perform some act except by a clear legislative direction: *Chase* v. *Lord*, 77 N. Y., 1. A liability arising out of a failure to make reports as required is conceded even by that court to be highly penal: *Garrison* v. *Howe*, 17 N. Y., 458; *Merchants' Bank* v. *Bliss*, 35 N. Y., 412. The weight of authority undoubtedly is that if there be a limitation upon the liability of the stockholders, either in the amount or by way of contingency, the liability becomes secondary, and is the mere creation of the statute: *Hanson* v. *Donkersley*, 37 Mich., 184; *Derrickson* v. *Smith*, 27 N. J. L., 166; *First National Bank* v. *Price*, 33 Md., 487.

Perhaps it is not material in this case to deter-

mine which of the two theories is the sounder in principle. For, whether the personal liability of a stockholder depends upon the one theory or the other, is original or secondary, it can only be enforced against a resident stockholder of a foreign corporation *ex comitate: Erickson* v. *Nesmith,* 15 Gray, 221; S. C., 4 Allen, 233. If the liability is in the nature of contract, and is not opposed to the legislation or public policy of the State in which it is sought to be enforced, the courts will enforce it: *Ex parte Van Riper,* 20 Wend., 614; *Seymour* v. *Sturgess,* 26 N. Y., 134; *Sackett's Harbor Bank* v. *Blake,* 3 Rich. Eq., 225. If the liability is penal in its nature, it will not be enforced outside of the State creating it: *Derrickson* v. *Smith,* 27 N. J. L., 166; *First National Bank* v. *Price,* 33 Md., 487; *Cable* v. *McCure,* 26 Mo., 371. And a liability made dependent upon the contingency of third persons failing to make a certificate or a report is, as we have seen, in its nature highly penal.

If the first clause of section 13, in the act under consideration, which makes the stockholders liable for all debts to laborers and servants for services, stood alone, it would be an unqualified liability in the nature of a contract, and enforcible, although considered as created by the statute, and notwithstanding the *dictum* of the supreme court of Massachusetts to the contrary in *Halsey* v. *McLean,* 12 Allen, 438. But this clause is followed, in the same sentence, by a limited liability of the stockholders to "other creditors" of the company; and the next succeeding clause, which requires a suit against the corporation and the

return of an execution unsatisfied before the stock-
holder can be made liable "for any debt of the com-
pany," manifestly includes both classes of liabilities.
The complainant cannot, therefore, in this suit recover
on the two claims which have not been reduced to
judgment against the corporation. The statutory rem-
edy, or rather the mode prescribed for enforcing a stat-
utory· right, all the authorities agree, must be strictly
pursued.

Another question arises in this connection—whether
the last clause of section 13 also applies to both classes
of liabilities. That clause reads thus: "But after the
full payment of the capital stock. and the certificate
thereof, as herein provided, the liability of the stock-
holder, as provided in this section, shall cease." If
we treat this clause as applying to both classes of
liabilities, the substance of the statute is that corpora-
tions may be organized under it, with power to create
debts for which they are to be primarily liable, and
their stockholders contingently after the assets of the
company have been judicially exhausted. After the
full payment of the capital stock and the certificate
thereof, the liability of the stockholder is to cease.
Section 13 is so worded that it may mean either that
the stockholders shall be individually liable for all
debts due to laborers and servants for services in full,
and to other creditors "to an amount equal to the
amount of stock held by them respectively," until the
capital stock shall have been paid and its payment
certified, and to continue thus liable for debts con-
tracted before that event even if the stock has been

paid and the payment certified; or, that all liability for any debts shall cease upon the certificate of the payment of the stock in full.    The latter construction was put upon a similar provision in a charter of incorporation by the supreme court of Maryland in *Booth* v. *Campbell,* 37 Md., 522.    In view of the fact that by sec. 9. of this act the capital stock is authorized to be paid in two installments, one-half within one year and the other half in two years, it could scarcely have been intended to make the stockholders liable at all if the stock was paid and the certificate made within the time prescribed.    It would be grossly inconsistent to make the stockholders personally liable for debts contracted within the time expressly conceded for the payment of the stock, if, in fact, the money was paid within the time, at any rate after the stock has been fully paid.

The capital stock was paid in full, in the present case, before the expiration of the first year.    If the stockholders can be held liable for debts of the corporation, upon the construction suggested above, it will be because the president and a majority of the directors failed to make, or to make and file the certificate of payment.    Such a liability must depend wholly on the statute.    No such liability could accrue at common law.    At most, the common law would have awarded actual damages for the failure, and no more, and then only against the parties guilty of the failure. In no possible sense can such a liability be said to be fixed by contract.    It is a forfeiture or penalty for a violation of a provision of the charter by the

officers of the corporation. The creditors cannot be said, in any fair sense, when they contract with the corporation, to trust as well to the personal liability of the stockholders as to the responsibility of the corporation, for the fulfillment by the latter of its engagements. That might be said, with some show of reason, under the early statutes of New York, where the liability of the stockholder was for all the debts of the corporation without qualification: *Corning* v. *McCullough*, 1 N. Y., 47. It cannot possibly be said, with reason, where the liability is limited, and contingent upon the performance of a formal act by the officers of the corporation: *Merchants' Bank* v. *Bliss*, 35 N. Y., 412. No duty rested upon the stockholder to do the act: *Chase* v. *Lord*, 77 N. Y., 6. No court of another sovereignty can be expected to enforce such a penalty.

The bill goes upon the idea, that the certificate of the payment of stock would be of no avail unless filed and recorded as prescribed in section 9 of the statute, and there is proof that it was not so filed. But section 13 says nothing about filing and recording. Its language is, "until the whole amount of the capital stock of the company shall have been paid, and the payment certified as herein required," and "after the full payment of the capital stock and the certificate thereof, as herein provided." The proof is that the capital stock was fully paid in time, and the legal presumption is that the certificate was made, the presumption of law being that all statutory conditions of a corporation once organized have been com-

plied with, and the presumption continues until the contrary is shown: *Chase* v. *Lord,* 77 N. Y., 6; *Bruce* v. *Driggs,* 25 How. Pr., 71. No proof has been offered to rebut the presumption in this case.

The conclusion thus reached is fatal to the complainant's case, unless it be as to the liability of the stockholders for the debts due to laborers and servants for services. And that depends upon the question whether the last clause of section 13 applies to that class of liabilities. If it does, the liability, as we have seen, becomes penal, and will not be enforced. And in that view, the liability ceases when the capital stock is fully paid, and its payment certified. The clause in words covers the liability of the stockholder "as provided in this section." It can only be confined to "other creditors" than servants and laborers by restricting the meaning of these words by interpolating or understanding other words. Such a course would not be proper, if the whole section gives a sensible meaning as it stands. The legislative intention seems to be this, that, after the recovery of judgment against the corporation and the return of an execution unsatisfied, a laborer or servant might sue any one or more of the stockholders for the whole of the debt due him for services, and "other creditors" might sue one or more of the stockholders for an amount equal to the amount of the stock held by them respectively at the time such debt shall have been contracted; but after the full payment of the capital stock and the certificate thereof, the liability of the stockholder shall cease. It is scarcely proper

to strain the language to another end, when it yields so plain a sense. In this view, the payment of the capital stock was the material point, the certificate of the payment by the president and a majority of the directors being a form; and to hold the stockholder liable for the failure of these officers to comply with this duty would be in the nature of a penalty, which a foreign sovereignty will not enforce.

This conclusion renders it unnecessary to consider whether the superintendent of a corporation is a laborer or servant within the meaning of the statute: *Coffin* v. *Reynolds,* 37 N. Y., 640. And, if not, whether the other claims of laborers and servants included in the judgment have not been paid by the sale of the corporation property, or have not lost their privilege by being blended with other claims in an inseparable judgment: *Atcherson* v. *Troy R. Co.,* 1 Abb. App., Dec. 13; *McMahen* v. *Macy,* 51 N. Y., 155, 162.

The chancellor's decree will be affirmed with costs.