WHITAKER *v.* MITCHELL MANUFACTURING COMPANY.

4-9641 244 S. W. 2d 965

Opinion delivered January 7, 1952.

 █

E. J. Butler and Mann & McCulloch, for appellant.

Norton & Norton, for appellee.

WARD, J. This is an appeal from a judgment of the lower court in the sum of $492.89 in favor of appellee against appellant. A jury was waived, the facts stipulated, and only one question is raised in the motion for a new trial.

Suit was filed February 12, 1951, by appellee for recovery on merchandise sold in July and August of 1950 to appellant, Frank E. Doggrell, Jr., and W. B. Konz who were engaged in business in St. Francis County under the firm name of Forrest City Wood Products, Inc. The complaint alleged that the named defendants were partners and asked for judgment against each as individuals and against the partnership. Since only appellant was served with summons judgment was against him and against Forrest City Wood Products, Inc., a partnership, and the cause was continued as to the other partners.

The only defense interposed by appellant, on motion and by answer, was that the Forrest City Wood Products, Inc., was a corporation and not a partnership, and that, therefore, appellant was not liable as an individual.

It is stipulated that Articles of Incorporation of Forrest City Wood Products, Inc., were filed with the Secretary of State on April 30, 1948, showing the above named defendants as the only shareholders, and that said Articles were filed with the County Clerk of St. Francis County on March 19, 1951. The latter date is also the date on which the cause was heard and judgment rendered.

It is frankly admitted by appellant that his only hope for relief in this court is to distinguish this case on the facts from the case of Gazette Publishing Company v. Brady, 204 Ark. 396, 162 S. W. 2d 494, or for us to overrule the Gazette case. The only factual difference be-

tween the two cases is, in this case, the Articles of Incorporation were filed [with the county clerk] on the day of trial while, in the *Gazette* case, they were never so filed. This difference is of no avail to appellant for the reason that if he was liable individually when the obligation was incurred in 1950 he could not later, without the consent of appellee, do anything to escape such legal liability.

Appellant ably argues that we should overrule the *Gazette* case, *supra,* and the reasons assigned therefore will not be discussed.

His contentions may conveniently be considered from two standpoints: first, the court [in the *Gazette* case] incorrectly construed the applicable statute; and second, its holding was not in harmony with prior decisions of this court.

The *Gazette* case construed § 3 of Act 255 of 1931 [Ark. Stats. § 64-103] and to understand appellant's contention it will be helpful to first consider similar statutes in force prior to 1931. Act 92 of 1869 § 9 [§ 1334 of Sand. &. H. Digest] provides that before any corporation shall *commence business* the Articles of Incorporation shall be filed with the Secretary of State and a copy filed with the county clerk [in the county where it is to transact business]. This Act was amended in 1903 [C. & M. Digest § 1711] wherein the place of filing was reversed as to time but still required both filings before the corporation could *commence business.* Arkansas Stats. § 64-103, referred to above, differs from the last mentioned statutes in that it provides the "corporate existence shall begin" upon filing the Articles with the Secretary of State. The next sentence states: "Provided, however, a set of the Articles of Incorporation . . . shall be filed for record with the County Clerk . . ."

In view of the above it must be conceded there is some foundation for appellant's contention that, in the instant case, the corporate existence began when the Articles were filed with the Secretary of State on April 30, 1948. This contention, however, was considered in

the *Gazette* case and disposed of by saying that prior to the 1931 statute a long line of decisions, beginning with *Garnett* v. *Richardson,* 35 Ark. 144, had held the Articles must be filed with both the Secretary of State and the County Clerk and that the same construction was applicable to the 1931 statute. Appellant, however, challenges the soundness of the conclusion reached in the *Gazette* case and in support quotes from several decisions of this court prior to the passage of the 1931 act. These cases, it is contended, show that the *Garnett* case [upon which the *Gazette* case was bottomed] had been impaired if not overruled prior to 1931. It is our opinion that a careful consideration of these prior cases does not justify appellant's contention that we should now overrule the *Gazette* case.

The *Garnett* case, *supra,* decided in 1879, is short and simply holds that where a purported corporation had not filed its Articles with both the Secretary of State and the County Clerk the individuals [attempting to form the corporation] were liable for a contracted debt. In the last paragraph it was stated that ''Appellants could not do business as a corporation until the articles of association were filed in the office of the secretary of state . . .'' This language gives rise to appellant's contention that the *Garnett* case held the attempted incorporation did not constitute even a *de facto* corporation and therefore could be no authority for the decision in the *Gazette* case, since, in the latter case, it was expressly stated that the organization was a *de facto* corporation. Our answer to this contention is that the above quote was not essential to the decision reached in the *Garnett* case and therefore may be treated as dictum, and also it must be treated in the light of later opinions which will be referred to hereinafter.

In *Whipple* v. *Tuxworth,* 81 Ark. 391, 99 S. W. 86, decided in 1907, where an improvement district had not fully complied with the organization statute it was held that it was, never the less, a *de facto* corporation and that a *de facto* corporation could sue and be sued and, as a general rule, do whatever a *de jure* corporation can do.

This language, however, was not germane to the decision because, as stated by the court, the real issue was not properly before it. Also in this connection it is well to note that to say a *de facto* corporation can sue and be sued is not to say, necessarily, that the individuals might not be held liable in certain instances. It is not necessarily inconsistent to say a *de facto* corporation may sue and be sued and at the same time say the individuals who attempt incorporation [but fail to comply with the statute] shall be estopped from taking advantage of their own mistakes to escape liability.

The decision in *Bank of Midland* v. *Harris,* 114 Ark. 344, 170 S. W. 67, decided in 1914, referred to the *Garnett* case and used the following language which is quoted by appellant: ''That decision seems to be against the weight of modern authority and the doctrine of it should not be extended any further.'' Following the above, however, is this language: ''It does not follow that the corporation itself would not also be liable as a *de facto* corporation, nor that statutory liability of incorporators would be unenforceable.'' This was a case where the county treasurer had deposited county funds in the bank and sought to recover from the stockholders under a statute making them liable. A defense was interposed that the bank had not completed its organization in that the articles had not been filed with the Secretary of State. It was in this connection that the court, holding the stockholders liable, referred to the *Garnett* case and used the language first quoted. We think the decision was sound and that the *Garnett* case should not have been extended to relieve the stockholders of liability. Note also that this was a case where the incorporators were seeking to take advantage of their own carelessness to escape liability, and that the *Garnett* case was not overruled.

It is next contended that the *Garnett* case was circumscribed in *Breitzke* v. *Tucker,* 129 Ark. 401, 196 S. W. 462, decided in 1917. Here appellee brought suit for an injury occurring on February 18 against certain individuals who had signed articles of incorporation dated Feb-

ruary 9 and duly filed on March 4. The decision in the *Garnett* case was relied on by appellee to hold the defendants liable because they made an abortive attempt to incorporate on the 9th. The court held that appellants had a right to show that the date "February 9" was inserted by mistake and that the date intended was later than the 18th [the date of the injury] and the court also stated that "the evidence [is] insufficient to support a verdict that appellants were partners." It was in this connection that the court said: "This liability is said to exist under the authority of the case of *Garnett* v. *Richardson* . . . It has been stated, in subsequent cases, that the above cited case, which is here relied on, was apparently against the weight of authority, and, *while it has not been overruled or qualified,* we have expressly declined to extend the doctrine of that case."

Finally it is insisted that the *Garnett* case was in effect overruled by *Wesco Supply Co.* v. *Smith,* 134 Ark. 23, 203 S. W. 6, decided in 1918. There appellant sought to hold Smith personally liable for merchandise sold to a purported corporation which had failed to file its articles with the Secretary of State and this court held Smith was not individually liable. In reaching this conclusion, however, the court refused to overrule the *Garnett* case, but distinguished it on the facts. In the opinion it was pointed out that Smith had bought stock in the corporation *after* the attempted organization and knew nothing of the omitted filing, and also that appellant had dealt with the corporation as such and not with any individual. We can readily understand appellant's assertion that the *Garnett* case was, in effect, overruled, but the fact remains that it was not so considered by the court. If we were free to do so we might agree with the dissenting opinion of Chief Justice McCULLOCH in which he stated it would be better to overrule the decision in the *Garnett* case rather than try to distinguish it.

Regardless of what our views might be were this question of first impression, the issue presented here was squarely passed on in the *Gazette* case, *supra,* and we find no compelling reasons for disturbing that decision.

We have examined the briefs in the *Gazette* case and find that the decisions discussed above were there presented and considered.

Affirmed.

ED. F. McFADDIN, Justice (Concurring). I have always thought that the Court was in error in its decision in the case of *Gazette Publishing Co.* v. *Brady,* 204 Ark. 396, 162 S. W. 2d 494; and I am still of that opinion. Nevertheless I am unwilling to overrule that case at this time because of the reasons herein mentioned.

The first reason is that *Gazette* v. *Brady,* was decided in 1942; and the Arkansas Legislature has met several times since that year, and has never amended the corporation statute to overcome the holding in *Gazette* v. *Brady.* The correct way to have the law changed is by act of the Legislature, rather than by judicial overruling of previous opinions. This matter was discussed in some detail in my dissenting opinion in *Ebrite* v. *Brookhyser, ante,* p. 676, 244 S. W. 2d 625. In the case at bar, there is not involved a "rule of property," as was involved in *Ebrite* v. *Brookhyser;* but even in the absence of a "rule of property," decisions should not be lightly overruled. The second reason is that we have never indicated, in any opinion until now, that there was any error in *Gazette* v. *Brady;* and I maintain that the lawyers and laymen of the State are entitled to some notice or caveat by the Court before it embarks on a career of overruling previous opinions.

There is no need to engage in a discussion of the stare decisis rule and the arguments for and against it. Those interested will find lengthy discussions and many cases cited in 15 C. J. 915 *et seq.;* 21 C. J. S. 297 *et seq.;* and 14 Am. Jur. 283 *et seq.*[1] One side will always argue that unless erroneous holdings are corrected, then wrong becomes perpetuated. The other side will always argue that unless previous holdings are followed, no protection is afforded by decided cases. These same arguments were made in the case at bar.

---

[1] Justice CARDOZA, in "The Nature of the Judicial Process," says: "Stare decisis is at least the everyday working rule of our law."

As a way out of the difficulty posed by the aforesaid arguments, at least three courses have been suggested by law book writers: the first course is by Legislative Action. That is the ideal and best way for the law to be clarified because such legislation operates only prospectively. The second course is by Overruling with Future Effect Only. This method is discussed in the Annotation in 85 A. L. R. 262, entitled, "Right of Court in Overruling Earlier Precedent to Apply New Rule Prospectively and Adhere to Old One as Regards Past Transactions." The defect with this second course is that it affords the successful litigant no relief. The third course out of the difficulty is for the Court to overrule a case only after having given notice or caveat that such course was in contemplation. Certainly this third course is far less harmful than overruling a prior case without previous notice.

As an example of giving notice that former holdings were to be questioned on their merits, I call attention to the case of *Cassen* v. *Cassen,* 211 Ark. 582, 201 S. W. 2d 585. In that case we overruled the earlier case of *Squire* v. *Squire,* 186 Ark. 511, 54 S. W. 2d 281. But in *Cassen* v. *Cassen,* we pointed out a series of cases in which we had repeatedly stated that the case of *Squire* v. *Squire* should be modified, was a questionable decision, and was under reconsideration. So when we finally overruled *Squire* v. *Squire,* lawyers and litigants generally had been put on notice that such a step was in contemplation and they could have regulated their conduct and litigation in the light of such judicial caveat.

We have never, until now, indicated any intention to re-examine the holding in *Gazette* v. *Brady,* so I think we should follow it until this notice is given. Even though the holding is not a "rule of property," nevertheless it should not be overruled without previous notice.